CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

FEB 2 8 2013

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

JESUS ALBERTO BATISTA,

    Defendant.

Criminal Action No.: 5:12cr11

By: Hon. Michael F. Urbanski
United States District Judge

## MEMORANDUM OPINION

Before the court is defendant Jesus Alberto Batista's ("Albert Batista") Motion to Suppress (Dkt. No. 335). In the motion, defendant seeks to suppress all evidence obtained as a result of the warrantless installation and use of a global positioning system ("GPS") tracking device on a vehicle in which defendant was a passenger under the reasoning of United States v. Jones, 132 S.Ct. 945 (2012). The court held a hearing on this matter on February 19, 2013. For the reasons set forth below, the motion is denied.

### I.

Defendant Albert Batista is charged with conspiring to distribute 1,000 grams or more of a mixture and substance containing a detectable amount of heroin, in violation of 21 U.S.C. § § 846 and 841(a)(1), and two substantive distribution counts. In early 2011, law enforcement suspected defendant Albert Batista and his brother, a codefendant in this case, Ariel "Alex" Batista, of trafficking heroin between Philadelphia, Pennsylvania and Harrisonburg, Virginia. During the course of the investigation, law enforcement came to understand that both Albert and Alex Batista were using their personal cars to drive between Pennsylvania and Virginia. Law enforcement believed that Albert Batista primarily drove a maroon Toyota Celica ("the Celica")

and that Alex Batista primarily drove a Dodge Intrepid ("the Intrepid"). Acting on this

information, on January 4, 2012, law enforcement agents in Harrisonburg, Virginia placed a GPS

tracking device on the undercarriage of the Intrepid and the Celica using magnets. Law

enforcement did not obtain a warrant before placing the GPS tracking device on the vehicles.

On January 5, 2012, a confidential informant notified law enforcement that Alex Batista

would be travelling to Philadelphia, Pennsylvania to obtain heroin. On January 6, 2012, the GPS

tracking device indicated that the Intrepid was driving southbound toward Harrisonburg from

Philadelphia. Investigators asked the Virginia State Police to look out for the Intrepid and

conduct a Carroll doctrine stop.[1] A Virginia State Trooper observed the Intrepid driving

southbound on Interstate 81 and performed a traffic stop under the Carroll doctrine. After the

state trooper turned on his emergency lights to pull over the Intrepid, he noticed that it had a

third brake light that was partially out. When the trooper stopped the Intrepid, Alex Batista was

driving the vehicle, and Albert Batista was a passenger. Alex Batista's person was searched, and

he was subsequently placed inside the police vehicle. Alex Batista then consented to a search of

the vehicle during which law enforcement discovered eighty bundles of heroin located on the

passenger side, stuffed underneath the dashboard near the glove box.

In this motion, defendant Albert Batista, the passenger in the vehicle, contends that the

warrantless placement of the GPS tracking device constituted a "search" under the Fourth

Amendment pursuant to the Supreme Court's holding in Jones. Defendant argues that the search

was illegal because it violated his Fourth Amendment right to be free from unreasonable

---

[1] In United States v. Carroll, 267 U.S. 132 (1925), the Supreme Court established the "automobile exception" to the warrant requirement for searches. The Fourth Circuit recently noted that "[u]nder this exception, '[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more.'" United States v. Kelly, 592 F.3d 586, 589-90 (4th Cir. 2010) (quoting Pennsylvania v. Labron, 518 U.S. 938, 940 (1996) (per curiam)). The scope of a search pursuant to this exception is as broad as a magistrate could authorize. United States v. Ross, 456 U.S. 798, 825 (1982). Thus once police have probable cause, they may search "every part of the vehicle and its contents that may conceal the object of the search." Id.

2

searches and seizures. Thus, defendant argues, given the illegality of the search, the exclusionary rule should apply, and all evidence, both direct and derivative of the illegal GPS tracking, should be suppressed as "fruit of the poisonous tree" pursuant to Wong Sun v. United States, 371 U.S. 471 (1963) and Brown v. Illinois, 422 U.S. 590 (1975).[2]

The government argues that Albert Batista lacks standing under the Fourth Amendment to challenge the legality of the search. Specifically, the government argues that Albert Batista did not have a reasonable expectation of privacy in the Intrepid because he was not the primary driver of the vehicle, he was merely a passenger in the vehicle at the time of the stop, and the vehicle was not in his "possession" at the time the GPS device was placed on the vehicle. The government argues that even if Albert Batista has standing, the exclusionary rule does not apply because the circumstances of this case trigger the good faith exception to the Fourth Amendment warrant requirement, thereby limiting the application of the exclusionary rule.

Defendant and government both proffered and presented additional evidence at the February 19, 2013 hearing. Defendant's evidence consisted mostly of proffers by his counsel rather than direct evidence. Counsel for defendant proffered that the Intrepid was registered to Albert and Alex Batista's mother and was shared by both brothers. Counsel for defendant noted that at the time the GPS tracking device was placed on his car, the car was in Albert Batista's possession because it was parked in the parking lot of Albert Batista's apartment complex. Counsel for defendant stated that Alex Batista did not live at the apartment complex at which the

---

[2] Essentially, defendant argues that but for the information gained from the investigator's illegal placement and use of the GPS tracking device, the police could not have legally conducted the traffic stop on the vehicle on January 6, 2012. Therefore, defendant argues that the evidence recovered from the stop and search of the vehicle and the subsequent statements of defendant made to law enforcement occurred solely due to the illegal search, thereby triggering the exclusionary rule and mandating their suppression. At the hearing, defendant's argument as to the legality of the stop morphed slightly. He argued that the investigators and police knew that the tracking of the car was illegal, because the investigators intentionally provided a legal alternative for police to stop the car, i.e., the problem with the third tail light. Of course, the issue with the third tail light cannot justify the stop, as the state police did not notice it until after the police cruiser had activated its emergency lights directing the Intrepid to pull over.

3

Intrepid was found. During the period of time that the GPS device was tracking the movements of the Intrepid, defendant proffered that both Alex and Albert Batista drove the Intrepid. Finally, defendant called to the court's attention the written statement of facts, presented by the government, in support of guilty pleas entered by many of Albert Batista's co-defendants. In this statement of facts, the government notes that law enforcement performed a traffic stop on January 6, 2012 on "the Batistas' car."

At the hearing, the government contested that the Intrepid was used and driven by Albert Batista and, instead, maintained that the Intrepid was primarily driven and in the possession of Alex Batista. The government called the investigating agent to the stand, who testified that he investigated the Bastistas for about twelve months. During the period of investigation, the agent testified that he saw Alex Batista driving the Intrepid "at least five times." Additionally, the agent testified that he never saw Albert Batista driving the Intrepid and only saw him driving the Celica. At the court's request, the agent also clarified the intent behind the placement of the GPS tracking device on both the Celica and the Intrepid.

> THE WITNESS: I had information from other sources that both Alex and Albert Batista were making trips to different locations to obtain drugs and bring them back to the city of Harrisonburg.
>
> COURT: So your purpose in putting the GPS on the Dodge intrepid was, therefore, to track Albert and Alex Batista; correct?
>
> THE WITNESS: Correct.
>
> COUNSEL FOR DEFENDANT: And also for the purpose of stopping him if you needed to.
>
> WITNESS: Sure.

4

(Transcript at 26-27). Specifically, the agent testified that he understood Alex Batista did the driving between Philadelphia and Harrisonburg because Albert Batista often tested the heroin on himself during the drive.

Finally, the agent testified that, on January 4, 2012, he placed a GPS tracking device on the Intrepid in the middle of the night in the parking lot of Albert Batista's apartment complex. That same night, the agent also placed a GPS tracking device on the Celica in the parking lot of George's Chicken, the poultry plant at which Alex Batista worked.

## II.

Recently, the Supreme Court has held that "the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a search" within the meaning of the Fourth Amendment. Jones, 132 S.Ct. 945, 949 (2012). However, for a search to be a violation of the defendant's Fourth Amendment right, it must be "unreasonable." Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 619 (1989) (holding that the Fourth Amendment "does not proscribe all searches and seizures, but only those that are unreasonable.") The Jones court specifically declined to answer whether the warrantless attachment and monitoring of a GPS tracking device would otherwise be reasonable and pass Fourth Amendment scrutiny if supported by reasonable suspicion or probable cause. Id. at 954. Here, defendant Albert Batista challenges such a search, and argues that it was unreasonable given that it was not supported by probable cause or other exigent circumstances.[3] To challenge an illegal search and invoke Fourth Amendment protection, a defendant bears the burden to demonstrate standing. See Rakas v. Illinois, 439 U.S. 128, 130, n.1 (1978). After the defendant

---

[3]The Supreme Court issued the Jones opinion on January 23, 2012. The GPS trackers here were attached to the vehicles on January 4, 2012, and defendant was arrested on January 6, 2012.

5

has established that he has standing to challenge the search, he must then show that the search was unreasonable and thus violated his Fourth Amendment rights.

A.

In order to demonstrate standing to challenge a search, the defendant must establish that he has "a legitimate expectation of privacy in the invaded place." Rakas, 439 U.S. at 143. The defendant's expectation must be "personal[ ]" and "reasonable," and it must have "a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." Minnesota v. Carter, 525 U.S. 83, 88 (1998) (internal citations omitted).

The Fourth Circuit, in an unpublished opinion, has held that when determining whether a defendant has standing to challenge a warrantless GPS search under Jones, a "person who is not operating the car normally has no legitimate expectation of privacy in an automobile in which he asserts neither a property interest nor a possessory interest." United States v. Martinez-Turcio, 10-5046, 2012 WL 4054875, at *9 (4th Cir. Sept. 17, 2012) (unpublished) (citing United States v. Carter, 300 F.3d 415, 421 (4th Cir. 2002)).

In this case, the court must determine whether Albert Batista has standing to challenge both the placement of the GPS tracking device as well as its use. See United States v. Gibson, 10-15629, 2013 WL 538007, at *18 (11th Cir. Feb. 14, 2013); United States v. Hernandez, 647 F.3d 216, 219 (5th Cir. 2011). The facts, as presented in the briefs and at the February 19, 2013 hearing, demonstrate that Albert Batista had a reasonable expectation of privacy when the GPS tracking device was placed on the Intrepid because it was reasonable to assume that the Intrepid was used by both Alex and Albert Batista, and Albert Batista was in possession of the car at the time the GPS tracking device was attached. See, e.g., Gibson, 10-15629, 2013 WL 538007, at

6

*17-18 (holding that a non-owner, but frequent driver of a vehicle has Fourth Amendment standing to challenge the warrantless placement of a GPS tracking device on said vehicle when it was parked in his driveway). At the hearing, the agent testified that he had seen Alex Batista, the purported primary driver of the Intrepid, drive the car "at least five times" over the course of a twelve month surveillance operation. When pressed by counsel for defendant, the agent admitted that during the course of the investigation, he did not see Alex Batista every day, every week, or even every month.

This line of questioning and testimony suggests that the agent did not engage in regular, daily surveillance of the Batistas. Indeed, the agent was unable to say that he saw the purported primary driver of the Intrepid, Alex Batista, drive the car any more than five times. The agent's testimony is insufficient to establish that Alex Batista was the exclusive driver of the Intrepid. Indeed, it is reasonable to infer that both Alex and Albert Batista drove the Intrepid from the fact that the Intrepid was parked at Albert Batista's apartment late at night when the GPS was installed. This inference is supported by the fact that the agent also testified that the intent behind the placement of the GPS tracking device was to track both Albert and Alex Batista's movements. See Hernandez, 647 F.3d at 219 (finding that defendant lacked standing to challenge the search of a borrowed car which he was driving when the government had no intent to track defendant).

The evidence shows that Albert Batista had a possessory interest in the Intrepid when the GPS was installed because it was parked in the parking lot of his apartment complex. The government argues that the mere presence of the Intrepid at Albert Batista's apartment complex alone does not suggest a possessory interest; indeed, his brother, Alex, could have been visiting him in the middle of the night. However, this argument is undercut by the fact that, on the very

7

same night the GPS tracking device was placed on the Intrepid, another GPS tracking device was placed on the Celica in the parking lot of George's Chicken, a poultry plant at which Alex Batista worked. Although the issue is a close one, it is reasonable to conclude that at the time of the placement of the GPS tracking device, Albert Batista was in possession of the Intrepid.

The question of whether Albert Batista has standing to challenge the use of the GPS tracking device to monitor his movements in the Intrepid likewise is close. When the GPS device was placed on the Intrepid, the government believed that Albert and Alex Batista traveled together to purchase heroin and transport it back to Harrisonburg, Virginia. Indeed, the agent testified that he understood that the reason Alex Batista drove the car during the trips to Philadelphia was because Albert Batista would sample the supply of heroin on the road trip back to ensure the quality of the product. The agent testified that Alex Batista did not want his brother to "crash," and therefore, he would drive the car. It is with this knowledge of the joint use of the Intrepid by the Batista brothers that the government agents placed the GPS tracking device on both the Intrepid and the Celica. In addition, written statements of facts introduced by the government and agreed to by various co-defendants at guilty plea proceedings in this case referred to the vehicle stopped on January 6, 2012 as "the Batistas' vehicle." The plural possessive reference to defendant's last name used in the statements of facts indicates that both brothers had an interest in the car, contrary to the argument made by the government at the hearing. Considering this evidence in its totality, the court concludes that defendant has standing to challenge the placement and the use of the GPS tracking device.

**B.**

8

Next, the defendant must demonstrate that the search violated his Fourth Amendment right to be free from unreasonable searches and seizures. Whether or not a search is "reasonable" "depends on all of the circumstances surrounding a search or seizure and the nature of the search or seizure itself." Skinner, 489 U.S. at 619. Even assuming without deciding that the search was unreasonable and therefore violated defendant's Fourth Amendment rights, the court finds that the exclusionary rule does not warrant the suppression of the evidence in this case, because the good faith exception to the Fourth Amendment warrant requirement applies.

## III.

The exclusionary rule is "a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation."[4] Davis v. United States, 131 S.Ct. 2419, 2423 (2011). The exclusionary rule is a "judicially created rule . . . designed to safeguard Fourth Amendment rights generally through its deterrent effect." Herring v. United States, 555 U.S. 135, 139-40 (2009) (internal citations omitted). Deterrent value alone, however, is insufficient for exclusion because any analysis must also "account for the substantial social costs generated by the rule," since exclusion "exacts a heavy toll on both the judicial system and society at large." Davis, 131 S.Ct. at 2427 (internal citations omitted). "The principal cost of applying the [exclusionary] rule is, of course, letting guilty and possible dangerous defendants go free—something that offends basic concepts of the criminal justice system, and the application of the rule is only proper where its deterrence benefits outweigh its substantial social cost." Herring, 555 F. 3d at 141 (internal citations omitted).

In keeping with the purpose of the exclusionary rule, the Supreme Court has held that in some circumstances the "[t]he good-faith exception provides that evidence obtained in violation

---

[4] The Jones Court also did not decide whether, if a violation occurred, the exclusionary rule would require suppression or what such evidence must be suppressed. Id. at 964 n. 11.

of the Fourth Amendment and ordinarily subject to suppression under the exclusionary rule is admissible at trial if police act with an objectively reasonable good-faith belief that their conduct is lawful." United States v. Rose, CRIM. 11-10062-NMG, 2012 WL 4215868, at *3 (D. Mass. Sept. 14, 2012) Ultimately, the decision to suppress evidence "turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct." Herring, 555 U.S. at 137. This sentiment was echoed by the Davis majority. 131 S.Ct. at 2427 ("[T]he deterrence benefits of exclusion [will] [v]ary with the culpability of the law enforcement conduct at issue.") Thus, "when police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force and exclusion cannot pay its way." Davis, 131 S. Ct. at 2427–28 (internal citations omitted).

After the Jones decision, many district courts have grappled with the application of the good faith exception to the exclusionary rule as it pertains to GPS tracking device searches performed without a warrant. Specifically, these courts have focused on the language in Davis stating that the good-faith exception applies to an officer's "objectively reasonable reliance on binding judicial precedent," which is subsequently overturned. Id. at 2428. The Davis Court was not called upon to decide whether the good-faith exception applies when "the law governing the constitutionality of a particular search is unsettled." Id. at 2435 (Sotomayor, J., concurring).[5] The question before this court is whether the Davis good faith exception applies where, as here,

---

[5] Some district courts have held that when law enforcement acted with an objectively reasonable reliance on a comprehensive body of case law including non-binding appellate decisions from other circuits, suppression is not required even in the absence of binding circuit precedent. See e.g., United States v. Rose, CRIM. 11-10062-NMG, 2012 WL 4215868 (D. Mass. Sept. 14, 2012); United States v. Oladosu, Cr. No. 10–056–01 S, 2012 WL 3642851 (D.R.I. Aug. 21, 2012). Other district courts have held to the contrary. United States v. Ortiz, 878 F.Supp.2d 515, 541–43 (E.D.Pa.2012); United States v. Lujan, No. 2:11CR11–SA, 2012 WL 2861546, at *3 (N.D.Miss. July 11, 2012); United States v. Lee, 11–65–ART, 2012 WL 1880621, at *9 (E.D.Ky. May 22, 2012); United States v. Katzin, No. 11–226, 2012 WL 1646894, at *9–10 (E.D.Pa. May 9, 2012). In Ortiz, Lujan, Lee, and Katzin, the district courts have seemingly adopted a bright-line rule under Davis that law enforcement cannot, in good faith, rely on non-binding precedent from other circuits.

no Fourth Circuit case law expressly authorized the warrantless installation of a GPS tracker. In other words, does the good-faith exception apply also to an officer's reliance on non-binding out-of-circuit precedent?

The court believes, given the purpose of the exclusionary rule as laid out by the Supreme Court in Herring and Davis, the question of whether the good faith exception applies is a case specific and fact dependent analysis analyzing the specific actions of the law enforcement official and the ensuing need for deterrence.[6] Indeed, "the Davis majority rejected a restrictive and reflexive application of the doctrine in favor of a 'rigorous weighing of its costs and deterrence benefits,' with a focus on the 'flagrancy of the police misconduct.'" United States v. Rose, CRIM. 11-10062-NMG, 2012 WL 4215868, at *4 (D. Mass. Sept. 14, 2012) (quoting Davis, 131 S. Ct. at 2426–27). In determining whether or not deterrence is needed in a particular situation, the court looks at the culpability of the law enforcement conduct.

At the time law enforcement placed the GPS tracking device on the car on January 4, 2012, numerous federal courts had approved warrantless installation and monitoring of GPS devices on vehicles that remained on public roads, relying on, in part, the Supreme Court's holdings in United States v. Knotts and United States v. Karo.[7] See, e.g., United States v. Garcia,

---

[6] Limiting the application of Davis to situations in which there is only binding precedent would necessarily subvert the clear instruction by the Supreme Court to weigh the social costs against the deterrent value of exclusion when determining whether to apply the exclusionary rule. Like the court in United States v. Rose, CRIM. 11-10062-NMG, 2012 WL 4215868 (D. Mass. Sept. 14, 2012), the court believes such a bright line rule is unworkable in practice and would require courts to shift their focus from the particular facts of the case before it to an academic determination of whether the situation is "sufficiently analogous to a previous case to be considered 'binding.'" Id. at *5. Furthermore, the majority opinion in Davis clearly believed that suppression turned on the culpability of the officer. As noted by the court in Rose, Justice Breyer pointed out in his dissent in Davis that an officer is no more culpable if he believes the search he has conducted is within the bounds of the Fourth Amendment than if he follows "binding precedent" that is subsequently overturned. Id.

[7] In Knotts, the Supreme Court held that the officers' use of an electronic beeper, that had been hidden inside of a chemical container prior to coming into the defendant's possession, to track the defendant's movements as he traveled on public roads with the container in his car, did not violate the Fourth Amendment, as a person traveling in a vehicle on public roads had no reasonable expectation of privacy in his movements. 460 U.S 276, 281–82 (1983). One year later, the Court held in Karo that the consensual installation of an electronic beeper in a can, prior to the

11

474 F.3d 994 (7th Cir.2007); United States v. Pineda–Moreno, 591 F.3d 1212 (9th Cir. 2010);

United States v. Hernandez, 647 F.3d 216 (5th Cir. 2011); United States v. Marquez, 605 F.3d

604 (8th. Cir. 2010). In 2010, the D.C. Circuit broke with the majority of other circuits and held

that the use of a GPS tracking device for 28 days violated a defendant's reasonable expectation

of privacy. United States v. Maynard, 615 F.3d 544, 555-67 (2010).[8] Subsequently, a district

court in this circuit declined to follow Maynard, applying Knotts and the majority rule to

conclude that it "is clear that the use of a tracking device to track a person's movements on

public roads is not a violation of a person's Fourth Amendment rights." See, e.g., United States

v. Narrl, 789 F. Supp. 2d 645, 652 (D.S.C. 2011).

At the time the GPS tracking device was installed on Albert Batista's car, although the

Fourth Circuit had not weighed in on the issue, the majority of courts, including at least one

district court in this circuit, had. The majority of circuits concluded that the Fourth Amendment

was not implicated by the use of a GPS tracking device to track a vehicle on public roads. The

only circuit to break with these holdings was the D.C. Circuit, and in doing so, held that a

warrant may be required if the nature of the surveillance is both prolonged and continuous such

that it offends the defendant's reasonable expectation of privacy. Thus, officers, in this case,

reasonably relied on the comprehensive body of case law when placing the GPS tracking device

on the Intrepid without a warrant. The court can discern no clear deterrent value to applying the

exclusionary rule to this particular conduct as law enforcement relied in good faith on the

majority of case law, including Supreme Court precedent, when choosing not to obtain a warrant

prior to the installation of the GPS tracking device on the Intrepid. Additionally, the social cost

---

can entering into the defendant's possession, was not a search, because the installation itself conveyed no
information at all. 468 U.S. 705, 712 (1984).
[8]The appellants in Maynard were Antoine Jones and Lawrence Maynard. Their appeals were consolidated by the
D.C. Circuit, and that court reversed Jones's conviction and affirmed Maynard's. Maynard, 615 F.3d at 548. The
government appealed the D.C. Circuit's decision as to Jones in United States v. Jones, 132 S.Ct. 945 (2012).

12

exacted by the application of the exclusionary rule in this case would necessarily require the court "to ignore reliable, trustworthy evidence bearing on guilt or innocence." Davis, 131 S.Ct. at 2427. On balance, therefore, the court finds that the good faith exception applies in this case, and the evidence stemming from the January 6, 2012 stop and search and statements made thereafter are not subject to the exclusionary rule.

## IV.

For the reasons set forth above, the good faith exception to the Fourth Amendment warrant requirement applies in this case. Therefore, defendant's motion to suppress is denied. An appropriate order will be entered this day.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

Entered: February 27, 2013

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge

13